**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Ronald L. Booker, *et al.*,

    Plaintiffs,

    v.                                           Case No. 1:06cv667

Dee Sign Company, *et al.*,              Judge Michael R. Barrett

    Defendants.

### OPINION & ORDER

This matter is before the Court upon Defendants Dee Sign Company, Craig Dixon, and James Dugger's Motion for Summary Judgment. (Doc. 19) Plaintiffs Ronald L. Booker and Kimberly A. Booker have filed a Response in Opposition (Doc. 40), and Defendants have filed a Reply (Doc. 42). The Court permitted Plaintiffs to file a Supplemental Memorandum in Opposition (Doc. 46), to which Defendants were permitted to file a Response (Doc. 47). This matter is now ripe for review.

### I.    BACKGROUND

In 1994, Plaintiff Ronald Booker began working for Defendant Dee Sign as an insert and main panel printer. (Ronald Booker Depo. at 19-20) In 1995, Ronald moved to Florida, and left Dee Sign. (Id. at 21) However, Ronald continued to work in the printing industry. In 2001, Ronald returned to Ohio and was rehired by Dee Sign. (Id. at 21-22) At that time, Ronald performed both insert and main panel printing, and was paid $8.50 per hour. (Id. at 77-78, 84) Ronald received periodic raises, and in May of 2005 was being paid $12.00 per hour. (Id. at 87)

In January of 2005, Plaintiff Kimberly Booker applied for temporary employment at

Dee Sign through a temporary service. (Doc. 26, Kimberly Booker Depo. at 10-12) At the time, she was dating Ronald Booker, and the two were later married. Kimberly Booker was interviewed by Bill Haunert, who is the screen room supervisor for Dee Sign. Haunert assured Kimberly that the relationship between her and Ronald would not be a problem because she would be assigned to a different department. (Id. at 12-13) Haunert told Kimberly to report for work the following Monday. (Id. at 14-15) However, the Friday before Kimberly was to start work, the temporary service called her and told her not to report for work. (Id. at 24) The temporary service told Kimberly that Dee Sign had a policy that did not allow two people who were involved in a personal relationship to work in the same department. (Id.) Ronald is African-American, and Kimberly is Caucasian.

On Friday, September 30, 2005, Ronald Booker's car would not start. Ronald called into work and told Defendant James Dugger about his car problems, and said that he probably would not be in to work that day. (Doc. 20, Ronald Booker Depo. at 104, 109-110) Dugger is the supervisor of the main panel area of the Print Department. (Docs. 24, 25, James Dugger Depo. at 4) Dugger asked him to come in if he was able to get his car fixed. (Ronald Booker Depo. at 111) Ronald worked on his car, and had it started by 9:00 or 10:00 that morning. (Id. at 105-106) Ronald nevertheless decided to replace the car's vacuum line, tires, and brakes. (Id. at 106, 115-18)

In the meantime, Dugger had a conversation with one of Booker's co-workers, who told Dugger that the previous day he overheard Ronald say that he was going to miss work on Friday because it was supposed to beautiful day, and he wanted to spend it with Kimberly at a local fair. (Dugger Depo. at 72-73) Ronald does not deny that he made the statement, but maintains that he made this statement in a joking manner. (Ronald Booker

Depo. at 118, 121)  Dugger attempted to reach Ronald at least three times during the day, but only reached an answering machine.  (Dugger Depo. at 72)   Dixon also attempted to reach Ronald, but to no avail.  (Doc. 23, Craig Dixon Depo., Ex. 28)

Dugger and Defendant Craig Dixon made the decision to suspend Ronald for one day for calling in under false pretenses.  (Dugger Depo. at 92; Dixon Depo. at 100-101) Dixon acts as the Chief Operating Officer and General Manager for Defendant's Ohio facility, and is responsible for its daily operations.  Dugger reached Ronald by telephone on the afternoon of September 30th, and informed him that he was suspended for the following Monday.  (Ronald Booker Depo. at 113-14)

On October 4, 2005, Ronald returned to work and requested a meeting with Dugger and Dixon.  (Booker Depo. at 124-25)  During the meeting, Dugger and Dixon began discussing Ronald's other alleged violations of company policy.  (Id. at 129-130)  At one point Dixon asked Dugger to leave the room.  (Dixon Depo. at 46-47)  Ronald also began to leave the room, stating that he was not going to "stay in this room with his enemy." (Booker Depo. at 130-31)  Dixon extended his arms to physically restrain Ronald from leaving, and told Ronald to sit down.  (Booker Depo. at 130-31)  Ronald felt threatened and told Dixon that if he touched him, he would file assault charges.  (Id. at 130)  Dixon then stepped aside, and allowed Ronald to leave.  (Dixon Depo. at 74-81)  On the way out of the room, Booker told Dugger that "he was not going to let any Nazi intimidate him." (Ronald Booker Depo. at 130-31)  Dugger later attempted to talk to Ronald at his work station, but Ronald held up his hands and told him not to "walk up" on him like that and that he "didn't trust" him.  (Dugger Depo. at 149)

After this incident, Dugger felt that he could not longer effectively manage Ronald,

and he recommended firing Booker. (Dugger Depo. at 269-70) Dixon agreed with the recommendation. (Dixon Depo. 44) Defendants' stated reason for terminating Ronald is his disrespectful and insubordinate conduct. Specifically, Defendants point to Ronald's refusal to remain in the meeting as Dixon requested, referring to Dixon as the enemy, calling Dixon a Nazi, failing to take direction from Dugger, and telling Dugger that he did not trust Dugger.

Ronald Booker brings claims against Dee Sign for (1) race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq* based upon his termination; (2) race discrimination in violation of Title VII based upon the discrepancy in his pay; and (3) race discrimination under Ohio Revised Code § 4112.02(A) based upon his termination. Ronald Booker also brings claims against Dixon and Dugger under Ohio Revised Code § 4112.02(A) based upon his termination. Kimberly Booker brings claims against Dee Sign for (1) associational race discrimination in violation of Title VII based upon the refusal to hire her or her termination; and (2) associational race discrimination under Ohio Revised Code § 4112.02(A) based upon the refusal to hire her or her termination.

## II.  ANALYSIS

### A.  Motion for Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of

production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Moreover, this Court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp. 280, 283 (S.D.Ohio 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283.

### B. Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Sixth Circuit has held that Title VII protects not only individuals who themselves are members of a protected class, but also those individuals who, though not members of a protected class, are nevertheless "victims of discriminatory animus toward third persons with whom the individuals associate." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999).

### C. Plaintiff Ronald Booker's claims under Title VII

#### 1. Pay discrimination

In order to establish a *prima facie* case of pay discrimination under Title VII, the plaintiff must show that the employer paid lower wages to employees of the protected class than those outside the class, for equal work. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Odomes v. Nucare*, 653 F.2d 246, 250 (6th Cir. 1981).

In support of his claim of pay discrimination, Ronald Booker points to Defendants' Answer, which states that main panel printers are paid $12.00 to $14.00 per hour based on their experience and productivity. Ronald states that he did not begin making $12.00 per hour until May 21, 2005.

While it was not argued by Defendants until their Response to Plaintiff's Supplemental Memorandum in Opposition, Ronald Booker's Charge of Discrimination filed with the EEOC makes no mention of pay discrimination. (Doc. 19, Ex. E, Craig Dixon Decl., Ex. 4) Under Title VII, employment discrimination plaintiffs must exhaust all administrative remedies before seeking relief in federal court. *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976). The exhaustion of administrative remedies is a condition precedent to a Title VII claim. *Zipes v. TWA*, 455 U.S. 385, 392-98 (1982).

However, the Court also notes that it is to review the administrative complaint liberally so as "to encompass all charges reasonably expected to grow out of the charge of discrimination." *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992) (internal quotation marks and citations omitted). Even liberally construed, there is nothing in Ronald Booker's EEOC charge which would indicate that Ronald was claiming pay discrimination. "Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant

explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998), *citing Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544-45 (6th Cir. 1991). Because Ronald Booker failed to satisfy this requirement, the Court dismisses Ronald Booker's pay discrimination claim based on a lack of jurisdiction.

### 2. Termination

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997). Ronald Booker has not presented any direct evidence of discrimination.

A Title VII race discrimination claim is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v.*

*Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Defendants argue that Booker cannot establish that he was treated differently than similarly-situated, non-protected employees.

To be deemed "similarly situated" a plaintiff must establish that all relevant aspects of his employment situation were nearly identical to those he claims are similarly situated. *Ercegovich v. Good Year Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1992). Furthermore, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 352, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Ronald Booker first argues that his one-day suspension was unfounded because there is no evidence that he ever lied about his reason for missing work. Ronald then points to two other employees who he argues are "similarly situated." Ronald states that

Clifton Mills admits to making multiple false call-ins to Dee Sign for his reasons for being absent, but was only suspended one day for "excessive tardies." Ronald also states that Matt Bingle had attendance problems, but was never disciplined.

The Court notes that in arguing that he was treated differently than these employees, Ronald Booker is conflating two different adverse actions which were taken against him. The first adverse action was his suspension, and the second was his termination. According to his Complaint, Ronald's discrimination claims are based upon his termination, not his suspension. Moreover, Defendants have made it clear that the reason for his termination was not that Ronald called in under alleged false pretenses, but for his insubordinate conduct upon returning to work from his suspension.[1]

Ronald points to three Caucasian employees who he claims are "similarly situated" with respect to their insubordinate behavior. Ronald states that Jason Smith was falsely accused of smoking marijuana while on break in the company parking lot. Dixon had a meeting with Smith where he interrogated and chastised him, but when Dixon could not

---

[1] Moreover, even if Ronald could show that Defendants were "wrong" in their charge of false pretenses, this would not be sufficient to show that Defendants' reason for his termination was pretext for discrimination. The Sixth Circuit has explained that a plaintiff must allege more than a dispute over the facts upon which his discharge was based. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Instead, a plaintiff must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. *Id.* In order to determine whether the defendant had an "honest belief," a court must consider whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *Id.* As the Sixth Circuit has explained, a court need not "require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler,* 55 F.3d 799, 807 (6th Cir. 1998). While Ronald states that he provided Defendants with receipts for his car repair in discovery, Defendants did not have this information when they were making the decision to terminate Ronald. Therefore, the Court concludes that Defendants had an honest belief that Ronald had called in under false pretenses, and Ronald cannot show that this reason for his termination was pretext for discrimination.

prove the accusation, he did not discipline Smith. (Jason Smith Depo. at 37-40, 46-48)

Next, Ronald points to an altercation between Jason Everspaugh and Dixon. Ronald explains that Everspaugh had run out of gas, Dixon brought him gas, but refused to give him a ride back to his car. When Everspaugh later saw Dixon, the two men had a heated exchange, but Everspaugh's supervisor, Haunert, pulled Everspaugh aside and he eventually calmed down. (Doc. 28, Jason Everspaugh Depo. at 41-44, 71-74) Everspaugh and Dixon avoided one another after that day. (Id. at 45) Ronald states that Everspaugh was not terminated after this incident.

Finally, Ronald points to a verbal altercation between Jeffery Williams and Dixon. Williams was discussing leaving work early with Dixon and Dugger, and at one point in the conversation, Dixon cussed a few times. (Doc. 40, Ex. 12, Jeffery Williams Depo. at 57-59) Williams responded by yelling back. (Id.) Dixon began to walk away, and Williams told Dugger that if Dixon ever talked to him like that again, he would leave. (Id.) Ronald states that Williams was not terminated after this incident.

The Court finds Ronald Booker has carried his burden of proving that he was treated differently than similarly-situated, non-protected employees. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (2000) (explaining that the *prima facie* requirement for making a discrimination claim "is not onerous" and "poses a burden easily met") (citations omitted); *see also Jackson v. Federal Express Corp.*, No. 06-5844 (6th Cir. March 6, 2008) (slip op.) (finding that the district court impermissibly placed a burden of producing a significant amount of evidence regarding similarly situated employees in order to establish a *prima facie* case; and explaining that burden is better suited for the pretext stage). The three employees identified by Ronald Booker are similarly situated in that they were involved in

a verbal altercation with Dixon, who was their supervisor.[2] However, these employees were not terminated for this behavior. Therefore, Ronald has established a *prima facie* case of discrimination.

Nevertheless, the Court finds that Ronald cannot establish that Defendants' nondiscriminatory reason is pretextual. Ronald attempts to show pretext by relying on the same "similarly situated" evidence.

A plaintiff can establish pretext under the third *Manzer* prong–that the proffered reason was insufficient to motivate the adverse action–by demonstrating that he was treated differently than similarly situated employees. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000). This type of evidence "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084.

As to Smith, Ronald does not cite any insubordinate behavior by Smith, but only points to his run-in with Dixon. Therefore, the Court finds that Defendants' treatment of Smith does not show that Defendants' reason for their termination of Ronald was pretextual.

As to the altercation between Everspaugh and Dixon, Everspaugh testified that after the initial exchange with Dixon, he calmed down at the suggestion of his immediate

---

[2]Defendants argue that Everspaugh is not similarly situated because his supervisor was Haunert, not Dugger. However, the Sixth Circuit has explained that the *Ercegovich/Mitchell* "same supervisor" language may be applied so as to only require that the plaintiff and his or her comparator dealt with the same ultimate decision-maker, rather than the same supervisor. *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005). Here, Ronald Booker and the employees he has identified all dealt with Dixon, who as the chief operating officer and general manager was the ultimate decision-maker.

supervisor, Haunert. In contrast, when Dugger attempted to talk to Ronald, Ronald told him that he did not "trust him," thus alienating himself from the management and in Dugger's view, foreclosing any resolution of the conflict. Therefore, the Court finds that Defendants' treatment of Everspaugh does not show that Defendants' reason for their termination of Ronald was pretextual.

Finally, as to the verbal altercation between Williams and Dixon, the Court finds that this incident is not similar to the incident between Ronald and Dixon. It was Dixon who walked away from Williams. In contrast, Ronald Booker left a meeting with Dixon and threatened to file assault charges against Dixon. Following this conflict, Ronald engaged in another conflict with Dugger when Dugger was attempting to talk to him.

Moreover, Ronald Booker has not presented any evidence that any of these incidents between Dixon and the other employees followed on the heals of a suspension. In other words, Ronald Booker was already in "hot water" when he was involved in the incidents with Dixon and Dugger. Instead of being conciliatory or cooperative, he chose to escalate the conflict.

Therefore, the Court concludes that Ronald has failed to show that Defendants' proffered reason did not actually motivate his termination, and Ronald Booker's claim of discrimination based upon his termination is dismissed.

### D. Plaintiff Ronald Booker's claims under Ohio law

The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

However, there is one important difference between Ohio discrimination law and Title VII for purposes of Ronald Booker's claims. Ronald Booker has brought claims against Dixon and Dugger individually in addition to his claims against Dee Sign. The Sixth Circuit has held that individual employees cannot be held liable under Title VII. *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997) (holding "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). Yet, under Ohio law, a supervisor and employer may be jointly and severally liable for discriminatory conduct. *Genaro v. Central Transport, Inc.*, 703 N.E.2d 782 (Ohio 1999). However, because Ronald Booker has failed to show discrimination on part of his employer, the claims against Dixon and Dugger under Ohio law must also be dismissed. *Accord Novotny v. Reed Elsevier*, 2007 WL 2688171, *24 (S.D.Ohio 2007) (unpublished).

### E.  **Plaintiff Kimberly Booker's claims under Title VII**

As explained above, a Title VII plaintiff must exhaust all administrative remedies before seeking relief in federal court. Kimberly Booker admits that she has not satisfied this prerequisite to filing suit, but argues that Defendants waived this defense by failing to raise it in their Answer.

The Supreme Court has held that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Court explained that the provision granting district courts jurisdiction under Title VII does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. *Id.* Instead, the Court explained that

the provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. *Id.* at 393-94.

However, Kimberly Booker has not presented this Court with an untimely charge of discrimination. Instead, Kimberly has not filed any charge at all. Accordingly, this Court does not have jurisdiction over her claims, and Kimberly Booker's claim under Title VII is dismissed.

### F.     Plaintiff Kimberly Booker's claims under Ohio law

As previously explained, the Ohio Supreme Court has held that federal case law interpreting Title VII is generally applicable to cases involving claims of discrimination under Ohio law. *Plumbers & Steamfitters Joint Apprenticeship Comm.*, 421 N.E.2d at 131. Therefore, the Court will apply the same *McDonnell Douglas* burden-shifting analysis outlined above to Kimberly Booker's claims of discrimination under Ohio law.

Without disputing the Kimberly Booker has established a *prima facie* case of discrimination, Defendants argue that it terminated or did not hire Kimberly because of the history it had with Ronald Booker's family members.[3] Dixon had previously hired two of Ronald's sons, but had to fire both of them. (Booker Depo. at 62, 65) Ronald admits that their termination was warranted. (Id. at 64-65) When Dixon learned of the relationship between Ronald and Kimberly, he decided not to terminate or not hire Kimberly. (Dixon Depo. at 117-18) Defendants point out that this decision is in keeping with its policy that

---

[3]Defendants do not agree with Kimberly Booker's assertion that Defendants offered her employment, and then rescinded the offer. However, for purposes of their Motion, Defendants do not dispute Kimberly Booker's characterization of the facts.

Dixon must approve all hires who are friends or family members of an existing Dee Sign employee. (William Haunert Depo. at 44-45)

The Court finds that Kimberly Booker has failed to show that Defendants' reason for terminating or not hiring her is pretext. Kimberly Booker's evidence that other family members of existing employees have been hired does not show that the proffered reason had no basis in fact. There is no evidence that Defendants had the same history of employment problems with these other families. There is also no evidence that the proffered reason did not actually motivate the adverse action. Once Dixon learned of the relationship between Ronald and Kimberly, he made the decision that Kimberly should not work for Dee Sign. There is also no evidence to contradict Defendants' assertion that regardless of what Kimberly was told in her interview, that Dixon made the ultimate decision about her employment. Finally, Kimberly Booker has not shown that the proffered reason was insufficient to motivate the adverse action. Moreover, a federal court may not second-guess an employer's business judgment. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (citation and quotation omitted). Therefore, Kimberly Booker's discrimination claims under Ohio law are dismissed.

### III. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 19) is hereby **GRANTED**. This matter shall be **CLOSED** and terminated from the docket of this Court.

**IT IS SO ORDERED.**

          ***/s/ Michael R. Barrett***
Michael R. Barrett, Judge
United States District Court